```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF KENTUCKY
                  CENTRAL DIVISION at LEXINGTON
```

```
SHERA DAWN CAIREL,            )
                              )
     Plaintiff,               )   Action No. 5:15-cv-186-JMH
                              )
v.                            )
                              )
                              )
JESSAMINE COUNTY              )   MEMORANDUM OPINION AND ORDER
FISCAL COURT, et al.,         )
                              )
     Defendants.              )
```

                    **    **    **    **    **

This matter is before the Court upon the following motions: Plaintiff's motion to amend her complaint, [DE 5]; a motion to dismiss by Defendants Domidion and Jessamine County Fiscal Court, [DE 2]; and a motion to dismiss by Defendant Michael E. Johnson, [DE 9]. The motions have been fully briefed and are ripe for ruling.

**I.**

Plaintiff alleges that on November 5, 2014, she was involved in a motor vehicle accident in Nicholasville, Kentucky. She required emergency medical care, and Jessamine County EMT Michael Johnson was one of the first responders to the scene. Plaintiff reports that, in the ambulance on the way to the hospital, Johnson began asking her inappropriate questions about her marriage and personal life. Additionally, she claims that during her physical assessment, Johnson touched her in a way

that was "inappropriately affectionate and disturbing." Upon arrival at the hospital, Johnson lingered in Plaintiff's room and gave Plaintiff a written note containing his telephone number, along with instructions to call him "so they could be romantic."

Johnson had gathered Plaintiff's demographic information for a pre-hospital care report, which included Plaintiff's telephone number. A few hours after Johnson left Plaintiff at the hospital, Plaintiff began receiving text messages from a number that was unknown to her. She replied by asking the identity of the sender. According to Plaintiff, Johnson replied, identifying himself as the Jessamine County EMT who had cared for her. Plaintiff alleges that despite her pleas to cease contact, Johnson became very persistent and sent sexually graphic messages over the next several hours and days. Approximately one week later, Plaintiff's husband found out about the messages and attacked Plaintiff. Plaintiff's husband was arrested and the two subsequently divorced.

Based on the foregoing events, Johnson's employment as an EMT was suspended so that an investigation could be conducted. According to Plaintiff, Johnson's employment was terminated on November 18, 2014. She alleges that Johnson had a history of behavioral issues, including previous sanctions by the Kentucky

2

Board of Emergency Medical Services, and that Johnson's employers, Jessamine County Fiscal Court ("JCFC") and Jerry Domidion ("Domidion") failed to act reasonably to prevent Johnson from harming her and others.

## II.

As an initial matter, the Court considers Plaintiff's motion to amend her complaint. Federal Rule of Civil Procedure 15(a)(1)(B) provides that, if the pleading is one to which a responsive pleading is required, the pleading may be amended once, as a matter of course, within 21 days after service of a motion under Rule 12(b). As Plaintiff filed her motion to amend within 21 days of Defendants' motion to dismiss pursuant to Rule 12(b)(6), [DE 2], her motion to amend shall be granted. *See* Fed. R. Civ. P. 6(a)(1).

## III.

To survive a motion to dismiss, a plaintiff must demonstrate "a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's allegations must be sufficient to raise his or her claims above a speculative level. *Id.* Neither "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" nor "the mere possibility of misconduct" is sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

3

The Court now turns to Defendants' motions to dismiss. Kentucky law is clear that county governments are cloaked with sovereign immunity, enjoying the same level of immunity as the state itself. *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 94–95 (Ky. 2009). Further, it is well established that official capacity suits are just another way of pleading an action against an entity of which the officer is an agent and, thus, should be treated as a suit against the entity. *Commonwealth v. Harris*, 59 S.W.3d 896, 899 (Ky. 2001) (citing *Ky. v. Graham*, 473 U.S. 159, 165–66 (1985)). Thus, county fiscal courts and county officials in their official capacity enjoy sovereign immunity. *See Edmonson Cnty. v. French*, 394 S.W.3d 410, 414 (Ky. Ct. App. 2013) (citing Ky. Const. § 231); *Cabinet for Health & Fam. Servs. v. Hicks*, No. 2009-CA-2186-MR, 2010 WL 3604161, *3 (Ky. Ct. App. Sept. 17, 2010) (citing *Yanero*, 65 S.W. 3d 510; *Autry v. W. Ky. Univ.*, 219 S.W.3d 713, 716–17 (Ky. 2007)). Sovereign immunity precludes the maintenance of a suit against the state (or county) unless the state has given its consent to be sued or immunity is otherwise waived. *Yanero v. Davis*, 65 S.W.3d 510, 517 (Ky. 2001). There is no indication that the county has given its consent to be sued or that immunity has been waived here. Accordingly, Plaintiff's state law claims against JCFC and

Defendants Domidion and Johnson in their official capacities must be dismissed based on sovereign immunity.

State treatment of sovereign immunity, however, has no bearing on the question of Defendants' immunity under 42 U.S.C. § 1983 because federal law controls. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *see also Jefferson Cnty. Fiscal Court v. Peerce*, 132 S.W.3d 824, 837 (Ky. 2004). In Count Six of Plaintiff's original complaint, she alleges that Defendants Domidion and Johnson violated § 1983 by "abus[ing] the power of their respective public offices," and that JCFC's inaction in the situation "sent the chilling message that it was acceptable for its employees to laugh at the law." After the County Defendants filed their motion to dismiss, Plaintiff filed her amended complaint, which includes a "summary" of her claim under § 1983. The summary includes references to the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. Plaintiff goes on to aver that Defendants' conduct was "clearly based solely on her membership of a protected classification" and that Defendants "engaged in a clear pattern of disparate treatment of women."

While the precise nature of Plaintiff's § 1983 claim is not entirely clear, the Court construes the complaint in the light most favorable to the Plaintiff at this juncture.

5

Accordingly, the Court will attempt to construe Plaintiff's claim.

First, it is clear that Plaintiff has not stated a claim for denial of procedural due process, as she has not averred that she was deprived of a protected life, liberty, or property interest within the meaning of the Due Process Clause. *See Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Further, with respect to any potential substantive due process claim, Plaintiff has failed to articulate a "fundamental liberty interest," which is "deeply rooted in this Nation's history and tradition." Additionally, the facts as alleged by Plaintiff do not amount to "'a brutal and inhumane abuse of . . . official power, literally shocking to the conscience,' sufficient to state a claim for the violation of substantive due process rights." *See Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996) (quoting *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987)).

Plaintiff also alleges that the Defendants have denied her equal protection under the law by engaging in "a clear pattern of disparate treatment of women." To state an equal protection claim, a plaintiff must sufficiently plead that the government treated the plaintiff "disparately as compared to similarly situated persons and that such disparate treatment either

burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. For Bio-Ethical Reform, Inc. v. Napalitano*, 648 F.3d 365, 379 (6th Cir. 2011). Without question, women are a protected a class. *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 322 (1993). In her amended complaint, Plaintiff alleges that Defendants had received complaints from female employees that JCFC employees were "discriminating against and abusing women," culminating in the incident in which Johnson harassed Plaintiff. Accepting these allegations as true, Plaintiff has stated a viable claim for violation of the Equal Protection Clause of the Fourteenth Amendment.

Plaintiff also alleges that Defendants have violated her rights under the Health Insurance Portability and Accountability Act ("HIPAA"). However, federal courts have held repeatedly that HIPAA does not create a private right of action and, therefore, cannot be privately enforced. *See e.g., Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009); *Adams v. Eureka Fire Protection Dist.*, 352 F. App'x 137, 138-39 (8th Cir. 2009); *Wilkerson v. Shineseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010). Accordingly, any claims under HIPAA shall be dismissed for failure to state a claim under which relief can be granted.

The Court now turns to Plaintiff's state-law claims against Defendants in their individual capacities. In Count Four of her Complaint, Plaintiff claims that Johnson defamed her by communicating to a third person or persons that "Plaintiff pursued Defendant Johnson to engage in prurient conduct with him which consequently exposed Plaintiff to public ridicule or contempt in her relevant personal communities."[1] To make a prima facie case of defamation under Kentucky law, a plaintiff must prove the following: "[1] defamatory language [2] about the plaintiff [3] which is published and [4] which causes injury to reputation." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004). While the Court is satisfied that Plaintiff has alleged facts to meet the first, second, and fourth elements, the Court is concerned that Plaintiff has not explained how or to whom the defamatory statements were published. Plaintiff has actually provided nothing more than a recital of the element itself. As stated in *Iqbal*, 556 U.S. 662, 678–79, such pleadings will not survive a motion to dismiss. Plaintiff's false light claim fails for the same reason. *See McCall v. Courier-Journal & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky.

---

[1] Plaintiff makes a half-hearted attempt to include the County Defendants in the defamation claim by stating that they have "continued to publish or otherwise failed to correct" the defamatory allegations. One fatal error with this claim, however, is that Plaintiff makes no attempt to explain how the County Defendants were involved in the defamatory conduct in the first instance.

8

1981) (publication required for false light claim). Accordingly, Plaintiff's defamation and false light claims will be dismissed.

With respect to the tort of outrage, or intentional infliction of emotional distress ("IIED"), Kentucky has adopted the teaching of the Restatement (Second) of Torts. *See Craft v. Rice*, 671 S.W.2d 247 (Ky. 1984). Accordingly, the plaintiff must show (1) intentional or reckless conduct by the purported wrongdoer; (2) conduct so outrageous and intolerable that it offends generally accepted standards of decency and morality; (3) a causal connection between the wrongdoer's conduct and the plaintiff's emotional distress; and (4) emotional distress that is severe. *Id.* at 251. Additionally, the plaintiff must prove that the defendant solely intended to cause the plaintiff emotional distress when engaging in the conduct. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. Ct. App. 1993); *see also Brewer v. Hillard*, 15 S.W.3d 1, 7–8 (Ky. Ct. App. 1999). Plaintiff has provided sufficient factual allegations to state a claim for outrage against Defendant Johnson in his individual capacity. She alleges that Johnson, an EMT who was expected to provide her emergency medical care, touched and spoke to her in a sexually inappropriate way. Perhaps most shocking of all, she alleges that he took her phone

number from her medical records and sent her obscene photographs. She alleges that she has suffered severe emotional distress as a result.

Defendants argue that IIED is a gap-filler and, because Plaintiff pleads more traditional torts in the alternative, she is precluded from bringing this claim. It is true that relief is available under IIED only where a more a traditional tort cannot provide redress for the alleged conduct. *Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005). At this early stage of litigation, however, assuming Plaintiff's allegations to be true, it is possible that all of the required elements could be satisfied. Accordingly, this claim, with respect to Johnson in his individual capacity, will not be dismissed.

While no Kentucky court has explained the elements required to prove intrusion upon seclusion, this court agrees with the decision in *Smith v. Bob Smith Chevrolet, Inc.*, 275 F. Supp.2d 808, 822 (W.D. Ky 2003), which predicted that the Kentucky Supreme Court would adopt the Restatement's definition of the tort. Based on that definition, Plaintiff is required to show that there was (1) an intentional intrusion by the defendant; (2) into a matter she had a right to keep private; (3) which would be highly offensive to a reasonable person. Plaintiff alleges that, despite her reasonable expectation of privacy,

10

Defendant Johnson intruded into her medical records and personal life, which would have been highly offensive to a reasonable person in her position. The Court finds that the facts, as alleged by Plaintiff, are sufficient to state a claim for intrusion upon seclusion.

Finally, the Court reaches Plaintiff's claim for breach of contract. Under Kentucky law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) breach of that contract; and (3) damages to the plaintiff. *Bellsouth Telecommunications, LLC v. Serenity, Inc.*, 5:14-cv-139-KKC, 2015 WL 3690302, *1 (E.D. Ky. June 12, 2015) (citing *Strong v. Louisville & Nashville R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). Plaintiff fails to articulate a cognizable breach of contract claim. The contract alleged—one for medical services in exchange for payment—is not alleged to have been breached. Rather, Plaintiff attempts to circumvent the fact that no private right of action exists under HIPAA by characterizing her claim thereunder as one for breach of contract. Regardless of whether the contract included a HIPAA provision, there simply is no private right of action for violations of HIPAA, at the state or federal level. *See Young v. Carran*, 289 S.W.3d 586, 588 (Ky. App. Ct. 2008). This claim will be dismissed.

Based on the foregoing, **IT IS ORDERED:**

11

(1)  that Plaintiff's motion to amend complaint, [DE 5], is **GRANTED;**

(2)  that the motions to dismiss by Jerry Domidion and Jessamine County Fiscal Court, [DE 2}, and Michael E. Johnson, [DE 9], are **GRANTED IN PART** and **DENIED IN PART**;

(3)  that the following claims are **DISMISSED WITH PREJUDICE**: Plaintiff's state law claims against Defendants in their official capacities; Plaintiff's due process claim under § 1983; Plaintiff's HIPAA claim; Plaintiff's defamation, false light, and breach of contract claims against Defendants in their individual capacities;

(4)  and that the following claims may go forward: Plaintiff's equal protection claim under § 1983, Plaintiff's IIED/outrage claim against Johnson in his individual capacity; Plaintiff's claim for intrusion upon seclusion against Johnson in his individual capacity; and the claims alleged in Count 3 against Defendant Domidion in his individual capacity.

This the 15th day of December, 2015.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge